**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AVAZBEK TURSUNOV, | No. 4:26-CV-00826 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| JEFFREY BUTLER, *et al.*, | |
| Respondents. | |

**MEMORANDUM OPINION**

**SEPTEMBER 9, 2026**

## I. BACKGROUND

Avazbek Tursunov ("Petitioner"), a citizen of the Republic of Uzbekistan, is currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE").[1] Petitioner entered the United States of America in June of 2023 and was taken into custody in October 2025 during an ICE check-in appointment, remaining in ICE custody since then.[2]

Petitioner first filed a 28 U.S.C. petition seeking either release from custody or a bond hearing, asserting that his continued detention without a bond hearing violated his constitutional rights.[3] The Court granted that motion, finding that Petitioner's due process rights had been violated by the continued detention, and

---

1 Doc. 1 at 2.
2 *Id.* at 6.
3 *Id.* at 17-18.

ordered Respondents to either release Petitioner or to provide him with an "individualized" bond hearing with a detailed explanation of any denial of bond.[4]

Petitioner's bond hearing was held on June 3, 2026 before Immigration Judge Jacob Addicott ("the IJ").[5] At that hearing, Petitioner was represented by counsel.[6] The IJ asked Petitioner's counsel if Uzbek is the best language, and Petitioner's counsel answered affirmatively, and then waived interpretation on Petitioner's behalf.[7] Petitioner's counsel did not appear to consult with Petitioner in the moment about this decision, and the IJ did not ask Petitioner any additional questions to ensure that he could understand the proceeding.[8] Indeed, the IJ did not speak to or engage with Petitioner himself during the hearing at all.[9]

During the hearing, Petitioner's counsel submitted evidence regarding Petitioner's strong community support, including a declaration from his sponsor, proof of address, and proof of employment.[10] However, the hearing focused mainly on Petitioner's dismissed criminal charges, which he received in 2025 for strangulation.[11] Petitioner's counsel submitted a dispositional record indicating that the charges had been entirely dismissed, but the IJ held that the severity and recency

4 Doc. 6 at 8; Doc. 7 at 1-2.
5 Doc. 11-1.
6 *Id.*
7 *Id.* at 2.
8 *Id.*
9 *Id.* at *passim*.
10 *Id.* at 2-3.
11 *Id.* at 3-6.

of the allegations warranted a finding of dangerousness because Petitioner did not obtain additional underlying documents regarding the offense and the charges' dismissal.[12] The IJ held that, while there was no indication that it happened in this case, many domestic violence cases are dismissed due to victim recantation.[13] Besides the dismissed charges, the IJ did not mention any other considerations leading to his ultimate finding of dangerousness.[14]

Petitioner filed the instant *pro se* motion to enforce compliance with the Court's prior Order, asserting that the hearing was not sufficiently individualized and did not provide Petitioner with due process.[15] Petitioner noted that he believed his counsel was ineffective, as he did not receive a translator at the hearing and was unable to understand what occurred at the proceeding since he does not speak English.[16] However, Petitioner's counsel did file a reply brief in this matter, leaving the status of representation unclear.

After being ordered to do so, Respondents filed a brief in opposition to Petitioner's motion, attaching an unverified transcript of the bond hearing.[17] The motion is now ripe for disposition; for the reasons that follow, it is granted and Respondents are ordered to provide Petitioner with a new bond hearing.

---

12 *Id.* at 4-6.
13 *Id.*
14 *Id.* at 5.
15 Doc. 9 at 2-3
16 *Id.* at 2.
17 Docs. 10, 11, 11-1.

## II. LAW

Respondents first argue that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[18] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[19]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[20] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[21]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to

---

[18] Doc. 11 at 5.

[19] 8 U.S.C. § 1126(e).

[20] *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

[21] *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

enforce its own orders."[22] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[23]

Here, Petitioner asserts that his hearing failed to comply with the Court's order mandating that Petitioner receive an individualized bond hearing in line with fundamental notions of due process.[24] These arguments are excepted from § 1226(e)'s bar on review of bond determinations, as the Court is not divested of jurisdiction to consider whether the bond hearing complied with the Court's own order and whether it was fundamentally fair.[25] Therefore, Respondents' jurisdictional arguments fail.

Respondents additionally assert that Petitioner has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[26] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[27]

---

22 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).
23 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).
24 Doc. 9 at 3.
25 *See Ghanem*, 2022 WL 574624, at *2.
26 Doc. 11 at 7.
27 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[28] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[29]

Additionally, to the extent that Petitioner would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondents complied therewith. Accordingly, the Court has jurisdiction to consider Petitioner's motion.

**B. Merits**

Turning to the merits of Petitioner's motion, Petitioner argues that his bond hearing was deficient by not providing him with a translator and by relying only on dismissed criminal charges when determining he was a danger to the community.[30]

---

28 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

29 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

30 Doc. 9.

Respondents assert that the IJ sufficiently considered Petitioner's circumstances and that the hearing was not fundamentally unfair.[31]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[32] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[33] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[34] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[35]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[36] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the

31 Doc. 11 at 11-13.
32 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
33 *Id.* (internal quotation marks omitted).
34 *Id.* (brackets and internal quotation marks omitted).
35 *Id.* (internal quotation marks omitted).
36 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).

underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[37]

Moreover, "'[i]t is well-established that the provision of an interpreter is a minimum requirement of a fair hearing for [noncitizens] who have limited English proficiency; otherwise, [noncitizens'] procedural rights would be meaningless in [the] case where the judge and [noncitizen] cannot understand each other.'"[38] "Failure to provide an interpreter when it becomes apparent that an applicant or a witness is unable to communicate effectively undermines the fairness and reliability of the proceeding, and thus constitutes a denial of due process."[39] Accordingly, "'due process requires IJ's to determine whether a noncitizen has a sufficient level of proficiency in "Standard" English to proceed without an interpreter.'"[40] As part of

---

37 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).

38 *See Chi v Lowe*, 3:26-CV-1805, 2026 WL 2227305, at *11 (M.D. Pa. Aug. 3, 2026) (quoting *B.C. v. Att'y Gen. U.S.*, 12 F.4th 306, 314 (3d Cir. 2021) (internal quotation omitted)); *see also Zeng v. Lowe*, No. 3:26-CV-1448, 2026 WL 2086899, at *3 (M.D. Pa. July 20, 2026) ("'Courts have recognized the importance of a competent translator to ensure the fairness of proceedings to applicants who do not speak English'") (quoting *Marincas v. Lewis*, 92 F.3d 195, 204 (3d Cir. 1996); *Said v. Noem*, 3:25-CV-938, 2026 WL 904295, at *10 (W.D.N.C. Apr. 2, 2026) ("due process requires adequate translation of the proceedings so that the noncitizen is not deprived of 'an opportunity to be heard at a meaningful time and in a meaningful manner'") (quoting *Singh v. Holder*, 699 F.3d 321, 335-36 (4th Cir. 2012)).

39 *Amos v. Att'y Gen. U.S.*, 157 F.4th 313, 324 (3d Cir. 2025). In *Amos*, the Third Circuit "stress[ed] that it is critically important that IJs take steps to ensure that anyone who testifies at an immigration hearing is afforded an interpreter when circumstances suggest a communications issue that could undermine a petitioner's right to a full and fair hearing." *Id.* at 326. Such reasoning can be applied congruently to a noncitizen's due process rights in their own bond hearing, as noncitizens must be given a fair opportunity to present evidence and argument on their own behalf.

40 *Chi*, 2026 WL 2227305, at *11 (quoting *B.C.*, 12 F.4th at 314).

that inquiry, a noncitizen "must have 'the opportunity to communicate his language proficiency on his own terms.'"[41]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[42] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[43] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including, *inter alia*, whether the alien has a fixed address in the United States, the alien's family ties in the United States, and the alien's employment history.[44]

---

41 *Id.* (quoting *B.C.*, 12 F.4th at 316).

42 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

43 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

44 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors are proper considerations in determining dangerousness and risk of flight. *See, e.g.*, *Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*,

Additionally, "[t]o make out a claim for a violation of due process, the applicant must prove a violation of one of the three [key protections], as well as an initial showing of substantial prejudice."[45] "Substantial prejudice can be met by 'showing that the infraction has the *potential* for affecting the outcome of the deportation proceedings.'"[46]

Here, Petitioner's hearing was deficient in two of the fundamental tenets of due process: first, Petitioner was deprived of a fair opportunity to present argument and evidence on his own behalf because the IJ failed to determine that he could understand English sufficiently before waiving translation, and second, because the IJ did not sufficiently consider Petitioner's circumstances to provide him with an individualized hearing.

First, the IJ did not assess whether Petitioner could understand English before accepting his counsel's waiver of his right to an interpreter.[47] Petitioner's counsel

---

No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026); *Dia v. Mullin*, No. 4:26-CV-01418, 2026 WL 1708513, at *5 n.54 (M.D. Pa. June 12, 2026) (Brann, J.).

45 *Julney*, 2022 WL 2964799, at *2 (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)).

46 *Id.* (quoting *Serrano-Alberto*, 859 F.3d at 213) (emphasis in original)).

47 Doc. 11-1 at 2. The Court notes that Petitioner seemingly advances an ineffective assistance of counsel claim in his *pro se* motion, asserting that his counsel was deficient by improperly waiving his right to an interpreter without consulting Petitioner. Doc. 9 at 1. Petitioner's point is well taken, as the failure to consult with Petitioner to ensure that he understood English before waiving his right to an interpreter suggests inefficacy. Moreover, there is some case law to suggest that ineffective assistance of counsel would itself be a due process violation. *See Calderon-Rosas v. Att'y Gen. U.S.*, 957 F.3d 378, 384-85 (3d Cir. 2020) ("It is by now beyond question that the Due Process Clause guarantees aliens the right to effective assistance of counsel in removal proceedings"); *Chi*, 2026 WL 2227305, at *10 ("Due process also entitles a noncitizen to effective assistance of counsel."). However, it appears that Petitioner is still represented by the same counsel, as the same law firm that represented him in his bond hearing

informed the IJ that "Uzbek is [Petitioner's] best language" and made no assertion that Petitioner could understand the proceeding if conducted in English, but waived Petitioner's right to an interpreter anyways.[48] The IJ did not ask Petitioner any questions, including whether Petitioner could understand English or if his waiver of his interpreter was knowing and voluntary.[49] Indeed, in Petitioner's motion, he indicates that he had no knowledge of the proceeding's substance until after its conclusion due to the lack of an interpreter.[50] Therefore, as the IJ made no inquiry into whether Petitioner could understand the nature of the proceedings nor whether his waiver of an interpreter was knowing and voluntary, Petitioner was deprived of a fair opportunity to present evidence and argument on his own behalf.[51]

The hearing was secondarily deficient because the IJ did not sufficiently engage with Petitioner's circumstances to render an individualized determination of danger as to him. Specifically, the IJ relied only on Petitioner's prior criminal charges that had since been dismissed when determining that he was a danger.[52] Petitioner's counsel submitted evidence that these charges had been dismissed, but the IJ held that Petitioner could not meet his burden because he did not obtain further

---

filed a reply brief in the instant matter. Doc. 11-1; Doc. 13 at 13. If Petitioner seeks to press the issue of ineffective assistance of counsel, he should either pursue new counsel or proceed on that matter *pro se*.

48 Doc. 11-1 at 2.

49 *Id.*

50 Doc. 9 at 1.

51 *See Serrano-Alberto*, 859 F.3d at 213.

52 Doc. 11-1 at 4-6.

evidence as to the reason for dismissal, even where Respondents provided no additional information to suggest that the charges were well-founded.[53] Indeed, the IJ did not engage with any of the other evidence supplied by Petitioner as to his community ties and sponsors.[54]

While dismissed charges may sometimes be a relevant consideration when determining bond, the Court finds that, in this case, the IJ's reliance entirely on Petitioner's dismissed charges was procedurally insufficient. "Continued detention resting solely on an arrest never tested 'following the full procedural protections our criminal justice system offers' lacks the neutral fact-finding that due process requires."[55] Moreover, the IJ has a duty to ensure that a bond determination is based upon a record not so devoid of evidence as to render a default judgment against the petitioner.[56] Yet, here the IJ did not consider any other relevant or facially valid considerations, and did not consider Petitioner's criminal history in context of his individual circumstances.[57] To hold that this hearing was procedurally proper would be to endorse a *per se* rule that any prior charges, even when dismissed and where no additional evidence of their foundation is presented by the Government, may

---

53 *Id.*

54 *Id.* at 3-5.

55 *Cesvette v. Moniz*, No. 26-CV-12662, 2026 WL 2494666, at *3 (D. Mass Aug. 25, 2026) (quoting *Doe v. Moniz*, 800 F. Supp. 3d 203, 216 (D. Mass. 2025)).

56 *See Serrano-Alberto*, 859 F.3d at 213; *see also U.S. ex rel. Zhelyatdinov v. Ashcroft*, No. 15-3146, 2002 WL 31957526, at *8 (E.D. Pa. Dec. 27, 2002) ("[T]he record must contain, as a matter of due process, at least some evidence to support the decisions of the Immigration Judge") (citing *Garner v. La.*, 368 U.S. 157, 163 (1961)).

57 Doc. 11-1 at 3-5.

alone bar a noncitizen from bond. Such a holding would be in direct contravention of the guarantee that all detainees receive an individualized determination supported by a record.[58] Therefore, as the IJ failed to make an individualized determination considering sufficient facets of Petitioner's circumstances, the hearing did not provide Petitioner with due process.

Furthermore, Petitioner has shown substantial prejudice, as each of these deficiencies are the kind that changes entirely the composition of the proceeding. Petitioner's inability to understand the proceeding without a translator deprived him of an opportunity to meaningfully participate, and resulted in his "confusion and misunderstanding" during the merits hearing.[59] This deficiency renders a new hearing appropriate; the Court "cannot assess the effect that [the lack of an interpreter] may have had on the outcome of the case because no interpreter was provided."[60] Similarly, had the IJ sufficiently considered Petitioner's circumstances,

---

58 *See Serrano-Alberto*, 859 F.3d at 213; *Mujica-Marquez v. Hoover*, No. 4:26-CV-623, 2026 WL 1483740, at *5 (M.D. Pa. May 27, 2026).

59 *See B.C.*, 12 F.4th at 318 (3d. Cir. 2021).

60 *Id.* There are certain fundamental procedural rights that the Third Circuit has noted "necessarily make proceedings fundamentally unfair" and do not require a finding of prejudice. *Lopez-Galeno v. Att'y Gen. U.S.*, No. 22-2425, 2023 WL 5165271, at *1 (3d Cir. Aug. 11, 2023) (quoting *Aquino v. Att'y Gen.*, 53 F.4th 761, 766 (3d Cir. 2022)). The Court has not located, from a cursory review, any opinion where the Third Circuit has explicitly noted that the failure to provide a translator in a bond hearing is the kind of structural, fundamental deficiency where prejudice is presumed. *See, e.g., Amos v. Att'y Gen. U.S.*, 157 F.4th 313, 323-24 (3d Cir. 2025) (analyzing prejudice for a language barrier issue without anywhere holding that translation issues are the kind of fundamental right which eschew the need for a prejudice analysis). Regardless, the Third Circuit has expressed that "language barriers can make effective communication impossible [] and thus undermine the fairness of removal proceedings," and that, when there is a language barrier present, there is "a significant risk" that a petitioner "will not be able to fairly present []his claims to the IJ." *Id.* at 324.

the IJ could have weighed the evidence differently and came to a different conclusion regarding Petitioner's dangerousness. Accordingly, each deficiency had, at the very least, the potential to affect the outcome of the hearing, and the prejudice requirement is met.[61]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's prior bond hearing failed to comply with this Court's prior Order and fundamental notions of due process. Accordingly, his petition will be granted, and Respondents are required to provide Petitioner with a new, compliant bond hearing or release him from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

61 *See Julney*, 2022 WL 2964799, at *2.